### BURTON v. BERTHOLD et al.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

#### No. 79.

1. LOGS AND LOGGING (§ 34*)—CONTRACT—MODIFICATION.

Plaintiffs accepted an order for certain yellow pine timber, "sound and square and without wane." Plaintiffs ordered the lumber from their mills according to the same specifications, but later objected that it was difficult to secure sticks absolutely free from wane and asked a modification. This was refused, but defendant promised that plaintiffs should receive liberal treatment as regards inspection and that a small amount of wane might be overlooked. Plaintiffs did not modify the specifications with their mills under such letter, but stated that future orders should provide for a certain amount of wane. *Held*, that such correspondence did not operate as a modification of the original contract with reference to wane.

[Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 34.*]

2. ESTOPPEL (§ 63*)—EQUITABLE ESTOPPEL—INCONSISTENCY OF CONDUCT AND CLAIMS.

Where, after the making of a contract for the sale of lumber free from wane, the sellers, who were brokers, endeavored to induce the buyer to agree to a certain amount of wane, which he refused to do, but offered liberal inspection with reference to such question, and the sellers did not change their contract with the mills, which had been made on the same specifications as the original on the faith of such correspondence, the buyer was not estopped to demand compliance with the terms of the original contract.

[Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 63.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Appell & Taylor (George H. Taylor, Jr., of counsel), for plaintiff in error.

Hyland & Zabriskie (Nelson Zabriskie, of counsel), for defendants in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. In this action the defendants in error, who were the plaintiffs below and are hereinafter so designated, sought to recover from the plaintiff in error, hereinafter called the defendant, the price of certain lumber sold and delivered, or attempted to be

delivered. The plaintiffs are wholesale lumber dealers located in St. Louis, Mo., and the defendant is a wholesale lumber dealer located in New York City. On April 6, 1904, the defendant received from E. W. McClave & Son of Newark, N. J., an order for 200,000 feet of long leaf yellow pine lumber, "sound and square." The defendant contracted with the plaintiffs to fill this order at a lower price; the difference constituting his profit. This contract is evidenced by a written order and a letter of acceptance. On April 14, 1904, the defendant sent the order, specifying the amount required, the price, sizes, place of delivery, and other particulars, designating the lumber as "sound, square edge, rough, long leaf yellow pine" and concluding with these words: "Ship no waney stock"—i. e., timber not square-edged. On April 19, 1904, the plaintiffs wrote the defendant unconditionally accepting the order, but inquiring whether his customer would be willing to have the lumber dressed, instead of in the rough, as specified in the order. This modification, however, was not agreed to.

The plaintiffs passed the order on to be filled by certain millmen in practically the same form, except presumably as regards price, as it was received from the defendant. On May 10, 1904, plaintiffs wrote the defendant that they were receiving complaints from the mills relative to the specification of the contract regarding wane, but saying:

"We have given the mills the exact specifications which we have received from you."

The plaintiffs further suggested that the defendant inform his customer of the difficulty in securing sticks of the required size absolutely free from wane. They also stated that they were making the inquiry concerning wane principally because they had in view future large orders, and:

"If your customer insists on the timbers being absolutely free of wane, we hardly think we could undertake any future orders of this character."

On May 12, 1904, the defendant wrote to the plaintiffs that he had had an understanding with his customer regarding the matter of wane, and had confirmed it in writing to him as follows:

" * * * I have ordered this stock from the mill to be cut free from wane; but, although I am ordering it that way, it is understood that, should any stock come in admitting a small amount of wane, you are not to be severe on the inspection in this respect. * * * In other words, on this big class of timber it is understood that we are to have fair and liberal treatment as regards inspection."

The letter then went on to say.

"You will see, therefore, the understanding I had with my customer, and upon the arrival of the first car I will go personally and see that the lumber is inspected in accordance with this understanding. I do not wish, however, to change any of the terms or conditions of my order No. 1,744, as I consider it a dangerous matter to open up the question of wane with the mills, but propose that you shall have every advantage in inspection that I can secure for you."

On May 17, 1904, the plaintiffs wrote to the defendant, stating in substance that they were glad to know that the defendant had made

provisions with his customer for accepting timber containing a certain amount of wane, and saying:

"Our letter of the 10th instant was written with a view of getting your customer to accept timbers containing a certain amount of wane on future orders, as we hardly believe we could get any more of these timbers on the same specifications as order No. 1,744. We think we could get at least 200,000 feet more in the course of the next 90 days at the same price, provided the specifications were made a little more lenient."

On May 19, 1904, the defendant wrote the plaintiffs acknowledging receipt of their letter of May 17th, and saying:

"You know the conditions and understanding between my customer and myself, and I will see to it that we get as liberal treatment as possible. At the same time I could not get him to make a concession in writing, as he is of the opinion that the mills would take advantage of this question of wane if we were once to let down the bars."

As stated in his letter of May 12, 1904, the defendant had written his customer as stated regarding waney stock; but it did not appear that his customer ever replied to such letter, or ever agreed to receive anything but the square timber which his contract called for. It did not appear that the defendant acted otherwise than in good faith in making his statements.

Upon the trial the question whether the contract called for stock wholly free from wane was of importance, and the trial court ruled, in accordance with the plaintiffs' contention, that the original contract, as evidenced by the order and its acceptance, was modified with respect to the provision concerning waney stock by the defendant's said letter of May 12th. The majority of the court think that this ruling of the trial court was erroneous. Notwithstanding that which the defendant said about his understanding with his customer and his assurances of liberal treatment in inspection, he expressly stated that he did not wish "to change any of the terms or conditions" of the order. To hold that this letter did change the contract is to give it an effect which the writer expressly stipulated it should not have. The contract could not be changed unless the defendant said so. It is as necessary that the parties' minds should meet to alter a contract as to make it. We cannot hold that the defendant did change the contract by a letter in which he expressly stated that he did not wish to do so.

As a matter of law we think that the defendant's letter did not modify the contract. Moreover, it seems clear that the plaintiffs themselves did not consider the contract modified. On May 23, 1904, they wrote the defendant regarding a prospective additional order as follows:

"Relative to an additional order for 200,000 ft. on the same specifications as your other order, we hardly think we could get our mills to accept same, as most of the people using timbers of this size specify that a certain amount of wane will be accepted. We might induce the mill to accept an additional order for 100,000 ft. on the same specifications; but on any more of these timbers it would be necessary for us to specify in our order to the mills that we would accept timbers containing a certain amount of wane at one end."

On May 26, 1904, the defendant wrote to the plaintiffs in regard to the proposed order as follows:

"How much wane would you specify on an order for 100 M. ft? This is a matter that would have to be very thoroughly understood before I could

consent to allow any wane on my order. I guess I could get you the order all right."

On May 31, 1904, the plaintiffs wrote to the defendant in reply to the inquiry in his letter of May 26th as follows:

"We will take the additional 100.000 ft. of large timbers on the same specifications as your order No. 1,744. On any future orders we would ask you to specify the amount of wane your customer would be willing to accept, as we are satisfied that we cannot get our mills to accept any more orders than the amount mentioned above on a specification that will not permit of any wane whatever."

While it appears that the additional order was not given, the correspondence clearly shows that the provision concerning wane was considered by both parties as continuing in the original contract.

The only theory upon which the plaintiffs could claim that the defendant waived the provision excluding waney stock would be based upon principles of estoppel. The defendant, in the letter of May 12th, stated that which was not true regarding his understanding with his customer. If the plaintiffs, relying upon such statements, and acting upon the belief that some waney stock would be accepted, had shipped timber from the West containing a small amount of wane, it may well be that the defendant would have been estopped from rejecting it upon that ground. But it does not appear that the plaintiffs were misled, or changed their position, by reason of the defendant's letter. As already shown their later letters treat the contract as excluding wane. Moreover, it appears from the testimony of one of the plaintiffs that the order to the millman was never changed. The timber which the millman shipped to the East was shipped under the specifications of the original order to fill such specifications. When trouble arose, the plaintiffs at once looked to the millman. "The millman had not stuck strictly according to our order to him." The plaintiffs were not induced to change their position by any misstatements in the defendant's letter, and no principles of estoppel arise in their favor.

As this erroneous ruling necessitates a new trial, it is not necessary to consider the other specifications of error. The questions raised by them may not arise upon another trial.

The judgment of the Circuit Court is reversed.